**In the Matter of Don Bernard STECKLER.**

**Don Bernard STECKLER**
v.
**UNITED STATES of America**
and
**District Director of Internal Revenue.**
**No. IP 57–B–124.**

United States District Court
S. D. Indiana,
Indianapolis Division.
July 1, 1961.

880

---

Thomas H. Krise, of Knox, O'Hara & Krise, Indianapolis, Ind., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Richard M. Roberts and Edward A. Bogdan, Jr., Attys., Dept. of Justice, Washington, D. C., and Don A. Tabbert, U. S. Atty., and Philip R. Melangton, Jr., Asst. U. S. Atty., Indianapolis, Ind., the United States and District Director of Internal Revenue.

STECKLER, Chief Judge.

This matter is before the undersigned district judge for a review of an order of the referee in bankruptcy sustaining the motion of the defendants to dismiss a complaint for injunctive relief filed by the plaintiff, Don Bernard Steckler, the discharged bankrupt.

Plaintiff was adjudicated a bankrupt on August 23, 1957. On November 5, 1957, the District Director of Internal Revenue caused a proof of claim to be filed in the estate in the amount of $20,-400.36 for excise taxes, penalties, and interest, of which $2,771.19 was for penalties. The referee allowed the claim for taxes and interest to the date of bankruptcy, August 20, 1957, but disallowed the claim as to all penalties and as to interest accruing subsequent to that date. On November 27, 1957, plaintiff was granted "a discharge in bankruptcy from all debts and claims which by the Act of Congress relating to Bankruptcy were made provable against his estate, except such debts as were by said Act excepted from the operation of a discharge in bankruptcy." On September 19, 1960, the defendant District Director of Internal Revenue, by letter to the plaintiff, stated that the disallowed penalties were legally due from plaintiff and subject to collection by the usual administrative procedure provided in the Internal Revenue Code. On October 20, 1960, plaintiff filed the present complaint seeking to enjoin the United States and the District Director from taking any steps to collect the $2,771.19 in penalties. Plaintiff complains of harassment, lack of funds, jeopardy of new business transactions and retention of employment, and states that the bankruptcy court has already determined that penalties are not taxes collectible out of the bankrupt's estate.

Defendants filed motions to dismiss the complaint for lack of jurisdiction over the subject matter, failure to state a claim, and that the relief sought is expressly prohibited by statute. The United States also alleged that it has not consented to be sued in a proceeding of this nature. On April 7, 1961, the referee sustained the motions to dismiss, finding that the bankruptcy court had jurisdiction of the parties and the subject matter, and concluding that the law was with the defendants and against the plaintiff. By note to counsel, the referee called attention to the case of Botta v. Scanlon, 2 Cir., 1961, 288 F.2d 504. Plaintiff has petitioned for review of the order of dismissal.

The defendants rely on 26 U.S.C. § 7421, which provides that except as provided in sections 6212(a) and (c), and 6213(a), which are not pertinent here, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. This section has been applied to penalties assessed in conjunction with taxes. Reams v. Vrooman-Fehn Printing Co., 6 Cir., 1944, 140 F.2d 237; Rosner v. McGinnes, D.C.E.D.Pa.1958, 167 F.Supp. 44.

The Supreme Court recognized an exception to the statute in Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. The court held that "in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary

circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector." 284 U.S. at page 509, 52 S.Ct. at page 263. The defendants contend that plaintiff has not sufficiently alleged either condition of the exception; that the assessment of the penalties was admittedly legal and penalties are not provable in bankruptcy and thus not subject to discharge; and that inability to pay is not an extraordinary circumstance to invoke equitable powers. The defendants also cite and rely on Section 57, sub. j of the Bankruptcy Act (11 U.S.C.A. § 93, sub. j), which provides:

"Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law."

The defendants cite 1 Collier, Bankruptcy ¶ 17.13 (14th ed. 1956); 3 Collier, ¶ 63.12, and other authorities, for the proposition that penalties are not provable, and therefore not dischargeable in bankruptcy.

Plaintiff recognizes the Standard Nut Margarine case, supra, and contends that he comes within the holding of that case because the collection of the penalties is unlawful, because of being discharged in bankruptcy, and that he has alleged special and extraordinary circumstances.

Contrary to the defendant's argument, plaintiff argues that penalties are provable in bankruptcy and thus dischargeable, although they are not allowable, or allowable only to the extent provided in § 57, sub. j, i. e., for the actual pecuniary loss sustained by reason of the act, transaction or proceeding out of which the penalty or forfeiture arose. He relies on National Foundry Co. of New York v. Director of Internal Revenue, 2 Cir., 1956, 229 F.2d 149, and United States v. Mighell, 10 Cir., 1959, 273 F.2d 682. Clearly the former case is distinguishable on the facts. There the court was dealing with penalties and interest sought to be imposed after the filing of the petition for arrangement. The court stated that the question of the accruing of interest and tax penalties during bankruptcy had divided the courts, including different panels of its own court, until the case of City of New York v. Saper, 1949, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, and other companion cases settled that such claims, whether federal or state, were not collectible in bankruptcy, including reorganization and arrangement proceedings. In the Mighell case, supra, the court held that income tax penalties are discharged to the extent that they are not satisfied out of a pre-bankruptcy lien.

Since the referee disposed of the matter on the pleadings, only questions of law are presented for review.

As stated before, the referee found that he had jurisdiction of the parties and the subject matter, and, although the defendants rely principally on other grounds in support of the referee's order, they still urge that the court is without jurisdiction of the parties and the subject matter. As respects the defendant, United States of America, it, of course, has sovereign immunity and may not be sued without its consent. Therefore, since this is not an action pursuant to a statute whereby the sovereign immunity has been waived and consent to be sued granted, the action as against the United States should have been dismissed on that ground alone. The United States has not pressed this point on review, however. On the other hand, defendants concede that a court of bankruptcy has the power and may issue an injunction against a particular collector where the tax is clearly illegal and some special and extraordinary circumstances are asserted. Local Loan Co. v. Hunt, 1934, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230.

The basic question then is whether the complaint states a claim upon

which relief can be granted, and this depends upon whether plaintiff's allegations bring him within the exception to 26 U. S.C. § 7421, recognized in Miller v. Standard Nut Margarine Co., supra. See also Botta v. Scanlon, supra. To come within the reach of the Miller case, the allegations must be such that plaintiff could conceivably prove: one, that the penalties are illegal, that is, that they have been illegally assessed, and two, that special and extraordinary circumstances are present to invoke equity. Absence of either would defeat the right to injunctive relief. See Homan Mfg. Co. v. Long, 7 Cir., 1957, 242 F.2d 645; England v. White, D.C.E.D.Ill.1958, 169 F.Supp. 449. It is noted, however, that there now seems to be a relaxation on the part of some courts in the application of the narrow holding in this regard in the Miller case, e. g., the Botta and National Foundry cases, supra. Here, the plaintiff does not claim the initial assessment of the penalties was illegal, nor is there an issue as to the amount of the penalties— rather, only the attempt to collect the penalties is claimed to be illegal. In his brief in support of his complaint for injunctive relief, plaintiff states:

"The plaintiff is not contesting the amount involved or the facts of the original assessment, but has alleged that plaintiff was discharged from all debts and claims which by Act of Congress relating to Bankruptcy, were made provable against his estate, except such debts as were by said Act, excepted from the operation of a discharge in bankruptcy. It is plaintiff's contention that in such discharge the penalties involved herein were discharged, and, therefore, the defendants are trying to collect an illegal tax."

Stated in another way, plaintiff claims the penalties attempted to be collected are an illegal tax because they were provable in bankruptcy and disallowed by the referee, and therefore discharged, and cannot now be collected.

First, it is essential to keep in mind the purpose of § 57, sub. j. Collier states:

"The Act of 1938 left § 57j substantially unchanged. The purpose of the provision is merely to protect general creditors against reduction of their dividend by reason of penalties or forfeitures owing by the bankrupt to the United States or any state or subdivision thereof * * *. The subdivision has no direct bearing on either provability under § 63 or dischargeability of debts under § 17. It deals with *allowance* exclusively ('* * * shall not be allowed * * *') and permits, therefore, of no inference that certain claims may not be proved or cannot be discharged." 3 Collier, Bankruptcy, ¶ 57.22.

And with respect to penalties for non-payment of taxes, Collier, in the same paragraph, states:

"The question of disallowance of penalties arises most frequently in connection with claims for past due taxes. The principle is clear. Even though the tax claim as such may be valid and allowable, tax penalties and excessive interest for its non-payment will be not allowed."

Reference must be made to § 63 of the Bankruptcy Act (11 U.S.C.A. § 103) for the purpose of determining whether a debt is provable.

In distinguishing "provability" from "allowability," Collier states:

"Debts of the types specified in § 63 may be proved. They also *may* be allowed. But whether a debt so proved will actually be allowed is a distinct issue, and one that depends not only on provability. Allowance of a claim is determined by the court on the merits as a judicial act, and requires some order or action of the court to make it effective. The court may disallow a claim because it does not constitute a debt provable under § 63, or because the proof was be-

lated, or because the claim is legally invalid. * * * The infinite variety of reasons for which a claim may be disallowed explains why a disallowed claim and a non-provable debt or claim are not identical things, and why a creditor whose debt is disallowed is not necessarily in the position of a creditor having a non-provable debt and therefore unaffected by the bankrupt's discharge." Id. ¶ 63.05.

As to whether claims for fines and penalties are "provable," Collier says:

"The Bankruptcy Act makes specific provision only for the *disallowance* of governmental claims for penalties and forfeitures. It does not expressly say that a fine or penalty claim asserted by the United States or any state or subdivision thereof is not *provable,* and considering that such a penalty claim may be based on a 'judgment' in the broad sense of the term, it might seem that a fine or penalty imposed by a judgment would be provable and allowable under § 63(a) (1), notwithstanding § 57j. The courts have rightly decided otherwise. Faced with the inconsistency of the statutory mandate to disallow a governmental claim for a penalty and yet to allow it if evidenced by a judgment or instrument in writing (which is often the case), the courts

have solved the problem by approaching it from the angle of dischargeability. It is almost generally accepted that the liability for a fine or penalty is not dischargeable, if for no other reason than the imperative necessity of enforcing criminal sanctions enacted for the public welfare. The only qualification on enforcement of penal laws should be the inherent power in the sovereign to pardon the criminal, and it would be undesirable to allow one convicted to frustrate such enforcement by submitting to bankruptcy proceedings. This policy reasoning is, in the absence of an explicit statutory provision, persuasive argument for holding claims for a fine and penalty non-provable, even if evidenced by a judgment or instrument in writing. But in accordance with § 57j, that part of a penalty judgment claim that constitutes costs should be admitted to proof and allowed; and likewise provable and allowable is a judgment for the amount of the pecuniary loss sustained by the act, transaction or proceeding out of which the penalty or forfeiture arose." Id. ¶ 63.12.

To further clarify what might be an apparent inconsistency in the application of § 63, sub. a and § 57, sub. j, Collier quotes at some length from Matter of Abramson and Fichhandler, 2 Cir., 1914, 210 F. 878.[1]

---

1. Id. 210 F. at page 879. There the court stated:

 " 'The bankrupts contend that there is a difference between the proof and the allowance of a claim and say that the judgment may be proved under section 63a, even though section 57j prevents it from being allowed. * * *

 " ' * * * they say that the judgment being a provable debt is dischargeable under section 17, which provides that a discharge in bankruptcy shall release a bankrupt from all his provable debts, with certain exceptions which do not cover this judgment.

 " 'It must be admitted that on the face of things this argument is logical. However, the provisions under consideration

are not wholly harmonious and we would not come to a conclusion so against public policy as that Congress intended bankrupts to be released from all liability for violating laws passed to protect the health of the community unless absolutely compelled to do so. Considering section 63 alone, neither penalties for violations of law nor damages arising out of such violation can be proved because they are claims in tort. On the other hand, a judgment recovered before adjudication for a definite sum could be proved, irrespective of the cause of action. But section 57j takes away from judgments for penalties their character as fixed liabilities. If the legislation stopped there, such judgments could not be proved under section 63a and would not be dis-

And finally, in treating the subject, "Debts Not Affected by a Discharge," after quoting § 57, sub. j the authors of the bankruptcy treatise state:

"Provability of penalties and forfeitures is, therefore, limited.

"Although the Bankruptcy Act does not make specific provision concerning the dischargeability of fines and penalties due to a state and to the United States, certain principles have become well settled in this connection. Certain obligations to the state and the United States are excluded from the category of dischargeable debts. Thus, fines and penalties are not affected by a discharge." Id. at ¶ 17.13.

The referee made no specific finding concerning whether the penalties involved were covered by a pre-bankruptcy statutory lien. However, the defendants state in their briefs on page 9 that all the penalties "involved [were] secured by liens * * *." Since this is not contradicted, for the purpose of this review, it will be assumed that the penalties were covered by statutory lien. Furthermore, the referee made no finding to indicate whether the Director made any showing that the Government had incurred any pecuniary loss by the act, transaction, or proceeding out of which the penalties arose, as mentioned in § 57, sub. j.

Here again, for the purpose of this review, since the defendants made no mention of it in their briefs, the court will assume that no such loss was incurred.

A dichotomy of opinion exists among the various federal circuits as to whether § 57, sub. j excludes claims for penalties imposed for delinquency in the payment of taxes, where the tax claim, including the claim for penalties, has been covered by a perfected pre-bankruptcy lien.[2] As stated by the court in the Mighell case, supra, "The conflict between the two lines of decision can only be resolved by the Supreme Court." The Sixth, Ninth, and Tenth Circuits have held that penalties are allowable to the extent that they are covered by valid pre-bankruptcy liens, notwithstanding § 57, sub. j, and the Fourth and Fifth Circuits, despite the existence of a pre-bankruptcy lien, have denied the allowance of such penalties.

The Mighell case, supra, is the most recent of the circuit court opinions. The court upheld the referee in allowing the government's claim for income taxes and interest to the date of bankruptcy, and also the penalties to the extent of the value of the security included in the pre-bankruptcy lien, and further held that the government had no surviving claim against the bankrupt for the penalties not satisfied out of the proceeds of the

charged under section 17. But section 57j in favor of the lawmaker further provides that he may recover any pecuniary damage sustained because of the act of violation. Reading the two sections together, we think that judgments for penalties are not debts which can be proved or allowed as such because they are not for a fixed liability, but that any pecuniary loss * * * sustained by the act out of which the penalty arose, together with actual and reasonable costs and interest, may be proved because of the provision in section 57j. So construed the act is perfectly reasonable.' "

2. Holding tax penalties secured by pre-bankruptcy liens are allowable claims in bankruptcy: United States v. Mighell, 10 Cir., 1959, 273 F.2d 682, 684; Grimland v. United States, 10 Cir., 1953, 206 F. 2d 599; Kentucky ex rel. Unemployment

Compensation Comm. v. Farmers Bank & Trust Co., 6 Cir., 1943, 139 F.2d 266; In re Knox-Powell-Stockton Co., 9 Cir., 1939, 100 F.2d 979; In re Urmos, D.C. E.D.Mich.1955, 129 F.Supp. 298; In re John S. Goff, Inc., D.C.Me.1955, 141 F. Supp. 862.

Cases not allowing penalties covered by valid pre-bankruptcy liens are the following: United States v. Harrington, 4 Cir., 1959, 269 F.2d 719; United States v. Phillips, 5 Cir., 1959, 267 F.2d 374; In re Burch, D.C.Kan.1948, 89 F.Supp. 249; In re Hankey Baking Co., D.C. W.D.Pa.1954, 125 F.Supp. 673; In re Lykens Hosiery Mills, Inc., D.C.S.D.N.Y. 1956, 141 F.Supp. 895; In re Parchem, D.C.Minn.1958, 166 F.Supp. 724. A compendium of cases and the treatment of this question also may be found in a comprehensive annotation in 77 A.L.R. 2d 1125 (1961).

pre-bankruptcy lien. The court declined to reexamine its earlier decision in Grimland v. United States (Footnote 2, supra), in which it said [206 F.2d 601]:

"It may well be that Congress had in mind that claims for tax penalties should not be allowed in bankruptcy, even though a lien has been perfected before adjudication, but the language of 57, sub. j does not adequately express that intent. We therefore hold that the claim may be enforced to the extent of the lien."

Taking an opposite view, the court in the case of United States v. Phillips (Footnote 2, supra) rejected the contention of the government that by virtue of the pre-bankruptcy lien, the penalty must be allowed, notwithstanding the provisions of § 57, sub. j. The court stated [267 F.2d 377]:

"The term 'lien', as generally used, is a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation. It is distinct from the obligation which it secures. 53 C.J.S. Liens § 1, p. 826 * * *. In the absence of an obligation to be secured there can be no lien. * * A 'tax lien' is merely a security established by statute of which the taxing authority may avail itself in the event of a default in payment. City of St. Petersburg v. Fiore, 160 Fla. 106, 33 So.2d 852 * * *. The penalty is an obligation of the defaulting taxpayer. The character of the obligation as a penalty is not changed, as we view the question, when it becomes a secured obligation. If the Government's claim against the bankrupt continued to be a penalty, and we think it did, and if the Government sustained no pecuniary loss by the act, transaction or proceeding out of which the penalty arose, and it is not so contended, then we conclude that the amount of the penalty was properly excluded from the Government's claim as allowed."

The court did not specifically deal with the question of whether the penalty claim of the government survived the bankrupt's discharge, and thus could be pressed for collection thereafter.

In United States v. Harrington (Footnote 2, supra), the court upheld the denial of the government's claim for penalties, where the amount of the tax was allowed. The court stated that it had long been settled that § 57, sub. j of the Bankruptcy Act prohibited the allowance of tax penalties in bankruptcy, citing People of the State of New York v. Jersawit, 1924, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405, and concluded that this prohibition applied where the government had obtained a pre-bankruptcy lien as well as to unsecured tax claims. To the government's contention that § 57, sub. j applies only to unsecured tax claims, and that where the government has obtained a tax lien, penalties may be included despite the express prohibition of § 57, sub. j, the court stated [269 F.2d 725]:

"We think the better view is that a tax penalty, whether secured by a lien or not, is still a penalty and is expressly barred by Sec. 57, sub. j. Sec. 67, sub. b merely exempts certain statutory liens, including tax liens, from the provisions concerning preferences in Sec. 60. Nothing in the language of Sec. 67, sub. b justifies the conclusion that it is intended to except liened penalties from the prohibition of Sec. 57, sub. j. Both sections are entitled to be given effect."

The court further rejected the government's argument that although the trustee or bankruptcy court is permitted to inquire into the validity of a lien, neither has the authority to scrutinize the lien, once it has been perfected. The court said:

"We find little merit in this contention. In Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, it was held that the bankruptcy court, being a court of equity, could determine the allowability of a claim

underlying a judgment lien, even though the judgment was valid against the bankrupt. In disallowing the claim, the Supreme Court said, 308 U.S. at page 305, 60 S.Ct. at page 244:

"'* * * And the mere fact that a claim has been reduced to judgment does not prevent such an inquiry. As the merger of a claim into a judgment does not change its nature so far as provability is concerned, Boynton v. Ball, 121 U.S. 457, 7 S.Ct. 981, 30 L.Ed. 985, so the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance. * * *'

"There is no rational ground for saying that the bankruptcy court may look behind a judgment lien to see what kind of claim it secures, but that it may not examine a tax lien."

Both courts, in the Phillips case in the Fifth Circuit, and in the Harrington case in the Fourth Circuit, quoted from the Supreme Court's decision in Gardner v. State of New Jersey, 1947, 329 U.S. 565, 580, 67 S.Ct. 467, 475, 91 L.Ed. 504. While this case dealt with a railroad reorganization under Sec. 77, 11 U.S.C.A. § 205, and did not directly decide the question of penalties reduced to liens, the Supreme Court, in discussing examples of a bankruptcy court's powers, significantly said:

"The reorganization court may also adjudicate questions pertaining to the amount of a tax claim secured by a lien without crossing the forbidden line marked by Arkansas Corporation Commission v. Thompson, supra, [313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244]. There is, for example the question whether the amount of the claim has been swollen by the inclusion of a forbidden penalty and thus to that extent does not meet the bankruptcy requirements for proof and allowance of claims. Section 57, sub. j of the Bankruptcy Act provides that debts owing a

State as a 'penalty or forfeiture' shall not be allowed. * * *"

After a thorough and careful review of the cited authorities, and with due deference to the court's concluding to the contrary, this court, too, is convinced that the reasoning of the cases which deny the allowance of tax penalties, is the more persuasive, and should be the rule, even though the penalties be covered by valid pre-bankruptcy liens.

The view that tax penalties which are secured by pre-bankruptcy liens are allowable in bankruptcy notwithstanding Section 57j had its genesis in In re Knox-Powell-Stockton Co., 9 Cir., 1939, 100 F. 2d 979. In reaching its decision in that case, the court relied upon Hiscock v. Varick Bank, 1907, 206 U.S. 28, 27 S. Ct. 681, 685, 51 L.Ed. 945. The Hiscock case, however, involved the pledge of life insurance policies to the bank to secure the payment of indebtedness evidenced by collateral notes. The court held that by virtue of § 57, sub. h of the Act the pledgee could convert the security into money according to the terms of the contract, and, absent fraud, the trustee in bankruptcy had no grounds to object to the valuation, since the security was evaluated in accordance with § 57, sub. h. The court stated that "the bankruptcy act did not attempt, by any of its provisions, to deprive a lienor of any remedy which the law of the state vested him with * * *." No question concerning liened tax penalties arose in that case. The Ninth Circuit treated the statutory tax liens which supported the penalty the same as the specific security involved in the Hiscock case, and held that "section 57j does not come into operation." 100 F.2d at page 983. However, in this circuit, a distinction is recognized between general tax liens which attach upon all property and right of property, whether real or personal, and specific securities which result from a voluntary transaction between the debtor and creditor. In re Kerber Packing Company, 7 Cir., 1960, 276 F.2d 245, 247. In other words, the courts will look behind

the lien to determine its nature and the nature of the obligation which it secures.

In conclusion, this court concurs in the rationale drawn by Chief Judge Nordbye in In re Parchem (Footnote 2, supra). There, even without the support of the subsequent circuit court opinions in the Phillips case and the Harrington case, in denying the government's contention that § 57, sub. j was inapplicable where a tax lien had been perfected, he reasoned [166 F.Supp. 727]:

> "The mere fact that Congress provided that the Government should be clothed with a perfected tax lien upon complying with certain statutes does not mean that as to such liens it intended to render inoperative a broad and comprehensive statute which denies to a sovereign the right to collect tax penalties in a bankruptcy court. * * * Basically, it would seem that the question may be determined on the premise that there is no reason to believe that congress intended to distinguish between secured and unsecured creditors in passing Section 57, sub. j. The primary purpose of the bankruptcy law is to accomplish an equitable distribution of the assets among creditors. The latter should not be entitled to share in the bankruptcy estate beyond that which they have contributed to the bankrupt before the advent of bankruptcy. Penalties do not necessarily reflect any monetary loss to one who exacts them. In the case of taxes, penalties are provided in the statutes so as to insure payment within the allotted period for payment; otherwise a sum greater than that actually due as taxes will be exacted. To allow tax penalties as claims in bankruptcy, however, will not penalize an insolvent delinquent taxpayer, but rather inflict injury upon the other creditors who will have their equitable interest in the estate reduced accordingly. Consequently, it is difficult to understand that Congress intended to differentiate between a secured and unsecured claim of the sovereign when it enacted Section 57, sub. j."

The court therefore concludes that the penalties involved in this case were not allowable, even though secured by lien, except to the extent provided in Section 57, sub. j, i. e., for pecuniary loss sustained by the transaction, with reasonable and actual costs occasioned thereby. Provability was likewise limited to that extent, and the obligation to pay the penalties was not affected by the discharge in bankruptcy.

 This being true, the action of the defendant District Director in taking steps to collect the penalty could not be an attempt to collect an illegal tax. Also, plaintiff has not alleged the existence of special and extraordinary circumstances sufficient to invoke equity jurisprudence. Thus, plaintiff cannot bring himself within the exception to Title 26 U.S.C. § 7421 recognized in Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S. Ct. 260, 76 L.Ed. 422. The complaint fails to state a claim upon which relief can be granted, and the action of the referee sustaining defendant's motion to dismiss is affirmed.